Andrew E. POUNDS a/k/a Eugene Wright, Appellant,

v.

UNITED STATES, Appellee.

No. 85–214.

District of Columbia Court of Appeals.

Argued Feb. 26, 1987.
Decided Aug. 12, 1987.

Lawrence M. Baskir, Washington, D.C., for appellant.

Mary Incontro, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, and

Kathleen E. Voelker, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN and TERRY, Associate Judges.

PER CURIAM:

■ After a jury trial, appellant was convicted of two counts each of rape, carnal knowledge, and incest.[1] On appeal to this court he alleges (1) that the trial court improperly admitted evidence of prior sexual contact between himself and the complainant; (2) that his conviction was not supported by adequate corroborative evidence; (3) that the trial court erred by failing to poll the jury and voir dire the jury a third time regarding prejudicial publicity; and (4) that his convictions for rape, carnal knowledge and incest merge.[2] We affirm.

I

At trial, the government presented the testimony of the fourteen-year-old complainant that her father, appellant, had been forcing her to have sexual intercourse with him since she was six or seven years old. The charges in this case stemmed from two such specific incidents.

Appellant challenges the introduction of evidence showing that he had engaged in sexual conduct with the complaining witness before the specific assaults in October and December 1983 with which he was charged. The trial judge admitted the evidence of prior bad conduct on the basis that it tended to show "gratification," i.e.,

"the predisposition to gratify special desires with that particular victim."

■ Evidence of "other crimes" or prior bad acts committed by a defendant but not charged in the indictment is inadmissible at trial unless it qualifies under one or more well-established exceptions. In *Drew v. United States*, 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964), the court set forth five exceptions to the principle that "evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged" (emphasis in original; footnote omitted). The court found that evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. *Drew, supra*, 118 U.S.App.D.C. at 16, 331 F.2d at 90. However, *Drew*, a robbery case, states that its list is "not necessarily all-inclusive," *id.* at 16 n. 10, 331 F.2d at 90 n. 10 and there are cases both before and after *Drew* which indicate that some theory of admissibility for evidence of prior sexual offenses in prosecutions for sex offenses may exist which is not included in the *Drew* list. *See Hodge v. United States*, 75 U.S.App.D.C. 332, 126 F.2d 849 (1942); *Bracey v. United States*, 79 U.S.App.D.C. 23, 142 F.2d 85, *cert. denied*, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944); *Miller v. Unit-*

---

1. D.C.Code §§ 22–2801, –2801, and –1901, respectively.

2. Appellant also raises two challenges to the validity of his indictment, alleging first that his convictions for rape, carnal knowledge, and incest were based on statutory provisions which had been effectively repealed. This argument is foreclosed by this court's recent decision in *Gary v. United States*, 499 A.2d 815 (D.C.1985) (en banc), *cert. denied*, — U.S. —, 106 S.Ct. 1470, 89 L.Ed.2d 725 (1986); *accord, Jenkins v. United States*, 506 A.2d 1120, 1122 & n. 8 (D.C. 1986). As to his second claim, that the indictment was insufficiently precise because it alleged in three counts that the offenses occurred between October 1 and October 31, 1983, this

court's decision in *Jackson v. United States*, 503 A.2d 1225 (D.C.1986) is dispositive. In that case, the indictment charged the defendant in seventeen counts with seven incidents involving three children and setting out four different time frames within a period of eighteen months in which the offenses occurred; the longest time frame encompassed nine months. As the court stated, the indictment was "sufficient to inform appellant of the charges against him. Given the child-complainants' inability to recall events by specific time and date, the indictment was more than adequate to safeguard appellant's rights." *Id.* at 1227. Accordingly, the trial court properly denied appellant's motions to dismiss the indictment on these grounds.

*ed States*, 93 U.S.App.D.C. 76, 207 F.2d 33 (1953); *Dyson v. United States*, 97 A.2d 135 (D.C.1953); *Calaway v. United States*, 408 A.2d 1220, 1227 n. 12 (D.C.1979); *Adams v. United States*, 502 A.2d 1011 (D.C.1986) (in chronological order).

 While these cases allude to a theory of admissibility for evidence of sex offenses committed by the accused upon victims *other* than the one named in the indictment, we are not here faced with the thorny question of whether evidence of a defendant's past sex offenses committed on persons other than the complainant should ever be admissible on a theory of "predisposition." The question before us is more easily resolved, since the conduct in question was a history of incest between complainant and appellant, and we limit our holding accordingly. We decide only that in prosecutions for sexual offenses, evidence of a history of sexual abuse of the complainant by the defendant may be admissible on the theory of predisposition to gratify special desires with that particular victim.[3]

 We limit our holding thus because in the circumstance of ongoing sexual abuse of the complainant by appellant, several factors combine to render the probative value of the evidence so high as to outweigh its potential for prejudice. *See Graves v. United States*, 515 A.2d 1136, 1139 (D.C.1986); *Campbell v. United States*, 450 A.2d 428, 431 (D.C.1982). First, the evidence of sexual contact occurred between the same parties. Second, the contact was incestuous. Third, the contact involved continuing conduct, beginning when complainant was a very young child. Finally, knowledge of the contact was pivotal, in some degree, to a determination of innocence or guilt; part of appellant's defense was that the story told by his daughter in the absence of certain physical manifestations, or an earlier complaint, was "impossible."[4] It is true that without in-

---

3. Whether the theory that evidence of a defendant's past sexual conduct with persons other than complainant may be admissible if it shows an unusual sexual taste or preference on the defendant's part survives *Drew* is an open question. We would caution against embracing an expansion of the exception which we explicitly endorse today, however. The presumption against admitting propensity evidence exists for a reason: a jury will tend to accord far too much weight to an accused's past misdeeds in its assessment of whether the defendant committed the particular act for which he is on trial. *See Ali v. United States*, 520 A.2d 306, 309–10 (D.C.1987) (evidence that defendant allegedly unlawfully touched complainant's younger sister on three to five occasions separate from any of the alleged incidents with complainant was not admissible under a common scheme or plan theory: "[t]he longstanding doctrine excluding evidence of misconduct or crimes independent of the charged crimes responds to several fundamental principles of our legal system: a person is tried only for those crimes with which he has been charged; the penalties of criminal law are appropriately imposed only for the unlawful activity charged, not for bad character or predisposition; admissible evidence at trial is generally limited to proof of the historical events which form the bases of the charges." It is of course clear that admissibility on the "common scheme or plan" theory is foreclosed. *See Ali, supra*, 520 A.2d at 310–13 (Mack, J.); 520 A.2d at 316 (Rogers, J.). *See also* Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses*, 6 ARIZ.

L.REV. 212 (1965) (arguing against a special exception to the presumption against "other crimes" evidence for past sex offenses, contending that sex crimes are no more difficult to prove than many theft offenses, and attacking the assumption that the rate of recidivism among sex offenders is extraordinarily high); *State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977) (limiting admission of evidence showing disposition toward sexual misconduct to cases where prosecution presents expert testimony of disposition); Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma*, 20 KAN.L.REV. 411, 424 (1972).

4. Thus, in closing argument, defense counsel argued:
 Now ask yourselves whether it is possible for a man with a very large penis, as described by Mrs. Martha Pounds, to have vaginal intercourse with a six-year-old child. Can it be done, especially without the child demonstrating or exhibiting some sign of bleeding or rupture or injury or damage? And Martha Pounds said she never saw any of that. We would suggest to you that impossibility with respect to a six-year-old child is a reason why you should disbelieve what [the complainant] says about October 1983 and December 29, 1983.
 Defense counsel also used the "alleged" history of incest affirmatively to suggest that it was incompatible with the lack of knowledge by the mother as well as the academic success and the complacency of the daughter. He attempted to weaken complainant's version of the specific

formation concerning the history of sexual abuse by appellant, certain facts would remain inexplicable. Complainant's apparent lack of hysteria or trauma when finally reporting to a friend (and thereafter to the friend's mother, the police, and a doctor) what had been occurring, the matter-of-fact way in which she described the October and December incidents of sexual assault, and her failure to inform her mother,[5] would be difficult to understand without the context of facts showing longstanding sexual abuse by her father. The circumstances are somewhat akin to those situations where we have found that the evidence was inextricably interwoven with the crime and therefore not *Drew* evidence. *See Toliver v. United States*, 468 A.2d 958, 960 (D.C.1983) (evidence of other criminal activity within the circumstances immediately surrounding the charged offense is really "not other crimes evidence," as that concept is traditionally understood, "be-

cause it is too intimately entangled with the charged conduct").[6]

## II

Appellant also contends that his conviction was not supported by adequate corroborative evidence. At the time of appellant's trial, the rule in this jurisdiction was that a defendant could not be convicted of a sex offense on the uncorroborated testimony of a youthful victim. *Fitzgerald v. United States*, 443 A.2d 1295, 1298 (D.C. 1982) (*en banc*). But "[c]orroboration then need only consist of circumstances which tend to support the victim's testimony, and need not consist of evidence corroborating every detail of the acts charged." *Jackson v. United States*, *supra* note 2, 503 A.2d at 1227 (citing *Evans v. United States*, 299 A.2d 136, 139 (D.C.1973)). "Whether the evidence sufficiently corroborates a minor-complainant's testimony depends on the totality of the circumstances ... and is decid-

---

incidents charged with a reference to the history of sexual abuse:

> She would have you believe that there is a pattern of sexual abuse by her father, and she is sitting in her room with nothing but a robe on and she hears her father come in and he goes and starts talking on the CB radio and she starts getting dressed. But five or ten minutes later when he comes in the room, she is still looking for her clothes. Rather if this situation was really occurring, and horrendous as it would be, wouldn't you think that she would have hurried up and got dressed; put some clothes on as fast as she could?

In contrast the government's references in closing argument to the history of sexual abuse were minimal.

5. Complainant testified that when (at the age of nine) she tried to tell her mother what her father had been doing to her, her mother did not believe her. Her mother testified as a defense witness.

6. The trial judge also stated he was admitting the evidence to prove intent. This was error. The *Drew* exceptions for intent, motive, and absence of mistake are applicable only when the defendant raises affirmative defenses (*e.g.*, mistake, entrapment, self defense) thus putting his state of mind in issue or when intent is a material issue. *See Willcher v. United States*, 408 A.2d 67, 76 (D.C.1979) ("as several courts have recognized, the intent exception has a capacity to emasculate the other crimes rule, since intent is generally an element of the offense charged. Thus it has been stated that intent must be a

material or genuine issue in the case, not merely a formal issue in the sense of entitlement to an instruction" (citations omitted)). Not only were affirmative defenses such as mistake and entrapment not issues in this case, but because specific intent is irrelevant for incest, carnal knowledge, or rape of a minor, appellant's state of mind was not at issue.

The trial judge gave the jury a classic limiting instruction, instructing the jury as though the evidence had been admitted under the "motive" exception to *Drew*, stating:

> There has been introduced that the defendant had sex with the complaining witness while she was six or seven years old. This evidence was admitted into evidence only for your consideration of whether it tends to show that the defendant had a motive to commit the offenses for which he is now on trial. You are not required to accept this evidence, and whether you accept it or not is a matter for you to decide. But if you decide to accept it, you may do so only for the limited purpose that I have just explained and you may not consider it as tending to show in any other way the defendant's guilt of the offenses for which he is now on trial.

While this was improper given that "motive" was not the basis for admitting the evidence, there was no objection, and the error must be considered under the "plain error" standard of review. *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (*en banc*). Since we do not find the limiting instruction "jeopardize[d] the very fairness and integrity of the trial," we find no reversible error.

ed on a case-by-case basis." *Curry v. United States*, 498 A.2d 534, 545–46 (D.C. 1985). Given that complainant's testimony was supported by medical findings, the presence of appellant's hair on her bathrobe, her reasonably prompt report of the assault to her friend, her friend's mother, and then to the police and examining physician, as well as appellant's opportunity to commit the offenses, we find evidence sufficient to corroborate complainant's testimony.

III

■ Appellant next alleges that the trial court erred in failing to voir dire the jury concerning a broadcast the night before of a network news program on the issue of child sexual abuse. We find no error here.

The trial court had previously conducted voir dire twice concerning publicity on the subject matter of child sexual abuse, on one occasion admonishing the jury to avoid all such publicity and on the other, reminding the jury of its previous admonition. While the court agreed to voir dire the jury a third time, it apparently failed to do so inadvertently due to the jury's stated desire to resume deliberations prior to receiving additional instruction. Eventually, when the jury indicated that it had reached a verdict, defense counsel advised the court that he no longer wished the jury to be asked "that question." Under these circumstances, the court's actions were adequate to insure a fair and impartial verdict. *See Welch v. United States*, 466 A.2d 829, 836 (D.C.1983) ("[it] is sufficient that the juror asserts he or she is able to lay aside his or her impressions and render a verdict based on the evidence presented in court and the court assures itself that this assertion is valid"). The jurors were adequately instructed on the matter of outside publicity "and there was nothing to indicate that the jurors had violated this instruction." *United States v. White*, 553 F.2d 310, 315

(2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977).

■ Also without merit is the claim that the trial court erred in failing to sua sponte poll the jurors individually following the return of the verdict. "The purpose of a jury poll is to ensure that no juror has been coerced or induced to join in a verdict to which that juror does not fully assent ... and to eliminate any uncertainty as to the verdict announced by the foreman or forewoman." *Arnold v. United States*, 511 A.2d 399, 417 (D.C.1986) (citations omitted). In this case, however, it appeared no coercion or confusion occurred in the jurors' assent to the verdict. After the verdict was announced by the foreman, the deputy clerk addressed the jury as a group both as to the general verdict and with regard to each individual count, and the jury indicated its assent. In the absence of a request for a poll of individual jurors, the trial court was not obligated to do more.[7]

IV

■ Appellant contends, finally, that his convictions for rape and carnal knowledge with respect to each of the two separate incidents for which he was convicted should be vacated because, he asserts, "they are lesser included offenses of incest with a minor." Appellant's ultimate conclusion, that rape and carnal knowledge merge with incest, is based on a faulty premise, namely, that "[c]arnal knowledge is a lesser included offense of rape, when the victim is a minor." This court specifically rejected that premise in *Ballard v. United States*, 430 A.2d 483, 486 (D.C. 1981). The court in *Ballard* stated:

> [T]he elements necessary to establish what has traditionally been known as the offense of common law rape are (1) sexual intercourse with a female, (2) committed forcibly and against her will, while the elements required to establish the offense of carnal knowledge or statutory rape are (1) sexual intercourse with a

---

7. Appellant's claim that defense counsel's failure to insist that the jury be voir dired a third time as to prejudicial publicity and to request a jury poll amounted to ineffective assistance of counsel is without merit. Appellant can show nei-

ther that counsel's performance was deficient in this regard nor that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984).

female child, (2) under the age of sixteen regardless of whether force was used or assent given.

The court then looked to the purposes of the statutory provisions proscribing rape and carnal knowledge, recognizing that "[a]lthough the proscription against rape and carnal knowledge are contained in the same statute, ... they are intended to serve different purposes." *Id.* at 486.[8] Thus,

> the prohibition against common law rape is to protect females capable of giving consent (*i.e.*, sixteen years old and above) from *forcible* sexual intercourse ... while the statutory proscription against carnal knowledge is intended to protect females below the age of sixteen, regardless of the use of force or consent, from *any* sexual relationship.... As a result of the different statutory purposes served by § 22–2801, carnal knowledge cannot be viewed as a lesser included offense of rape.

*Id.* (emphasis in original); *see also In re C.D.*, 437 A.2d 171 (D.C.1981).

 Neither rape nor carnal knowledge is a lesser included offense of incest, which advances yet a different purpose, that is, to protect persons of any age from marriage, cohabitation or sexual intercourse with individuals to whom they are related. The elements of the offenses of rape and incest are not the same, and each requires proof of one or more elements that the other does not.

The crime of incest involves the same bodily invasion, *i.e.*, sexual intercourse, as that of rape, but also requires two additional elements: (1) that the victim was related to the defendant within the third degree of consanguinity; and (2) that the defendant knew the victim was so related at the time of sexual intercourse. Lacking, however, from the elements of incest but required for rape is a showing that "the act was committed forcibly and against the will of the complaining witness."

*Robinson v. United States*, 452 A.2d 354, 359 (D.C.1982) (citation and footnote omitted). Furthermore, since incest requires proof of a familial relationship that carnal knowledge does not, and carnal knowledge imposes an age requirement that incest does not, those two offenses do not merge.[9]

*Affirmed.*

---

**8.** In order to determine whether one offense is a lesser included offense of the other, this court will "look to the purposes of the statutes to determine if the conduct at which they are aimed and the rationale for addressing that conduct is similar." *Hall v. United States,* 400 A.2d 1063, 1066 (D.C.1979).

**9.** Appellant also claims the trial court committed reversible error when it denied appellant's request for authorization to pay for the services of a polygraph examiner in aid of sentencing. Appellant had already been convicted, and the trial court did not abuse its discretion in denying appellant's motion.